882 F.2d 615
 Bankr. L. Rep. P 73,031, 9 UCC Rep.Serv.2d 9
MNC COMMERCIAL CORPORATION, formerly known as Maryland
National Industrial Finance Corporation, Plaintiff-Appellee,
v.
JOSEPH T. RYERSON & SON, INCORPORATED, Defendant-Appellant.
 No. 957, Docket 88-9044.
 United States Court of Appeals,
Second Circuit.
 Argued April 10, 1989.
Decided July 11, 1989.
As Amended Aug. 25, 1989.
 
 Hilary P. Bradford (Jane F. Clemens, Cohen, Swados, Wright, Hanifin Bradford & Brett, Buffalo, N.Y., of counsel), for plaintiff-appellee.
 Francis E. Kenny (Andrea Kojm Thomas, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., of counsel), for defendant-appellant.
 Before NEWMAN, CARDAMONE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This is a diversity action brought after the lifting of the automatic stay provided by the Bankruptcy Code, 11 U.S.C. Sec. 362 (1982) ("the Code"). The bankrupt entity is Ramco, Inc. ("Ramco"), a steel processing concern which first filed for reorganization under Chapter 11 of the Code and thereafter moved to convert to a Chapter 7 liquidation. The plaintiff-appellee is MNC Commercial Corporation ("MNC"), which holds a perfected security interest in the inventory and accounts receivable of Ramco. The defendant-appellant is Joseph T. Ryerson & Son, Incorporated ("Ryerson"), which owes over $300,000 to Ramco. Ryerson is a wholly-owned subsidiary of Inland Steel Co. ("Inland").
 
 
 2
 After the automatic stay was lifted, MNC, as the assignee of Ramco's accounts receivable, sued Ryerson in the Western District of New York to recover the amount owed by Ryerson to Ramco. Ryerson claimed in response the right to set off against its obligations monies owed by Ramco to Inland. Ryerson also claimed that MNC improperly disposed of Ramco's inventory after foreclosure. Judge Elfvin granted summary judgment to MNC on the basis of both state law and bankruptcy law. Although we fail to see the relevance of federal bankruptcy law to this diversity proceeding, we affirm.BACKGROUND
 
 
 3
 This case involves a triangular commercial relationship in the steel industry during the period 1984-85. Inland, a domestic integrated steel producer, supplied Ramco, a steel processor, with hot rolled bar steel products. Ramco processed these into cold drawn steel products, which it then sold to Inland's wholly-owned subsidiary Ryerson. During the 1984-85 period, Inland's sales to Ramco amounted to about $5 million annually, and Ramco's sales to Ryerson amounted to several hundred thousand dollars monthly.
 
 
 4
 Ramco and Ryerson never executed a comprehensive contract to govern their ongoing commercial relationship. Instead, they negotiated a standing price from time to time. Ryerson would transmit individual orders either by telephone or by sending an order form. Ramco, for its part, acknowledged Ryerson's orders by sending its own order acknowledgment form. The terms of the order forms of the two parties varied. Under a heading entitled "SET-OFF," Ryerson's order forms reserved "the right to apply any monies to become due [Ramco] ... toward the payment of any sums which [Ramco] ... may now or hereafter owe to us or to our parent company, Inland Steel Company...." Ramco's order acknowledgment forms, by contrast, made no reference to any setoff and declared that acceptance of its products was "expressly conditioned on ... assent to the terms and conditions of sale" specified on Ramco's form. Neither party signed the other party's forms. Moreover, in a large number of transactions at issue in this case, order forms from one or both parties were not preserved.
 
 
 5
 In May 1984, Ramco was in need of funds and entered into a revolving financing arrangement with MNC. MNC provided Ramco with a revolving loan of approximately $7 million, secured by Ramco's inventory and accounts receivable. MNC duly perfected its security interest by filing financing statements with the New York Secretary of State and the Erie County Clerk. Ramco thereafter encountered further financial difficulties, and in June 1985 Inland placed Ramco's account on a cash basis. On July 15, 1985, Ryerson ceased paying its obligations to Ramco, and Inland's credit manager notified Ramco that Ryerson's obligations to Ramco would be held as an offset or "contra" to the over $1.2 million that Ramco now owed Inland. Ramco nevertheless continued to ship steel to Ryerson. On October 11, 1985, Ramco filed for reorganization under Chapter 11. This filing triggered the Code's automatic stay of the enforcement of creditors' rights against Ramco. 11 U.S.C. Sec. 362.
 
 
 6
 On October 30, Ryerson issued a check, payable to Ramco, in the amount of $304,497.29, the amount owed on unpaid invoices. Ryerson did not send the check to Ramco, however, but instead stamped it "cancelled" and paid the sum in question to Inland. Ryerson did not move for relief from the stay imposed by Section 362(a)(7) of the Code. That stay prevents the retention of funds as a "set-off of any debt owing to the debtor that arose before the commencement of the case" without leave of the bankruptcy court.
 
 
 7
 On November 14, 1985, on motion of the debtor, the bankruptcy court converted the case into a Chapter 7 liquidation proceeding. On December 26, 1985, the bankruptcy court lifted Section 362's automatic stay of the enforcement of creditors' rights against the bankrupt. The lifting of the stay was at the request of creditors, including MNC, on the grounds that the creditors were not adequately protected. The lifting was, however, subject to the creditors' accounting to the trustee for monies collected.
 
 
 8
 MNC then pursued two remedies. First, it seized and liquidated Ramco's inventory. Second, MNC pursued its security interest in Ramco's receivables and initiated the instant suit against Ryerson in the Western District of New York for $333,640.33 that it claimed was owed by Ryerson to Ramco. Jurisdiction was based on diversity of citizenship. The trustee in liquidation attempted to intervene, but Judge Elfvin declined to allow him to do so.
 
 
 9
 Ryerson responded with a number of counterclaims and affirmative defenses, asserting, inter alia, that the sum at issue had been properly set off against Ramco's debt to Inland and that MNC had not liquidated Ramco's inventory in a commercially reasonable manner. Both parties moved for summary judgment. For purposes of the motions, MNC agreed to limit its claim to $307,377.21, of which Ryerson challenged $2,879.92 as "discounts" reflected in the "Remittance Advice" listed in the invoices.
 
 
 10
 Judge Elfvin granted summary judgment to MNC on two theories. The first was that Ryerson's exchange of forms with Ramco had never created a setoff right under state law "battle of the forms" analysis. The second was that Inland/Ryerson had no right to the setoff because it had not moved for relief from the stay of the retention of funds as a setoff under Section 362(a)(7) of the Code. Finally, Judge Elfvin rejected Ryerson's defense that MNC had improperly disposed of Ramco's inventory, stating that he "fail[ed] to perceive how [the alleged improper disposition] would impact upon the legitimacy of the setting off of Ryerson's debt...." Accepting Ryerson's claim of $2,879.92 in "discounts," he then granted summary judgment to MNC on August 26, 1988, in the amount of $304,497.29, a sum which Inland has since returned to Ryerson. Upon a stipulation of the parties, Judge Elfvin amended his order nunc pro tunc to include interest and to reflect Ryerson's prior withdrawal of a counterclaim of no relevance to this appeal. The amended judgment totaled $381,831.26.
 
 DISCUSSION
 
 11
 Both in the district court and here, the parties have focused largely on federal bankruptcy law, and in particular on Sections 553 and 362(a)(7) of the Code, which govern the treatment of setoffs in bankruptcy. We believe, however, that bankruptcy law is irrelevant because this litigation was initiated after the automatic stay had been lifted and involves a state law claim brought in federal court only because of the parties' diverse citizenship.
 
 
 12
 It is of course true that if the stay had not been lifted and the trustee in liquidation had brought an action, federal bankruptcy law would defeat Inland/Ryerson's claimed setoff. Setoff creditors have certain rights, see 11 U.S.C. Sec. 553; Boston and Maine Corp. v. Chicago Pacific Corp., 785 F.2d 562, 565 (7th Cir.1986), but this favored treatment is limited by 11 U.S.C. Sec. 362(a)(7), which stays most classes of creditors from "seizing" their setoffs without moving for relief from the stay.[1] Inland/Ryerson never moved for such relief and thus Ryerson would have been obliged to turn over the disputed funds to the trustee.[2]
 
 
 13
 The effect of lifting the automatic stay is only to allow MNC to pursue its remedies under state law, not to allow it to assert the unique powers of a trustee to marshal the estate. Were the result otherwise, MNC, whose sole role is that of an assignee of certain state law contract rights, would enjoy " 'a windfall merely by reason of the happenstance of bankruptcy.' " Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (quoting Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)). MNC's claim to the benefits of Section 362(a)(7) would, if accepted, clearly enhance its rights against Ryerson and is thus inconsistent with the policy of the Code to leave state law rights generally undisturbed. Cf. H.R.Rep. No. 595, 95th Cong., 1st Sess. 10, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5971 (1977) ("Bankruptcy is mainly a procedural device ... generally leaving undisturbed legal relationships that existed before bankruptcy."); Butner, 440 U.S. at 54, 99 S.Ct. at 917 ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); In re Morton, 866 F.2d 561, 563 (2d Cir.1989) (applying Butner to new Code); T. Jackson, Translating Assets and Liabilities to the Bankruptcy Forum, 14 J. Legal Studies 73 (1985).
 
 
 14
 Our decision is in no way inconsistent with the principle that state property rights may be suspended "in the event of actual conflict with the system provided by [the Code]." Butner, 440 U.S. at 54 n. 9, 99 S.Ct. at 918 n. 9. In the instant case, however, the conflict between Section 362(a)(7) and MNC's state law rights is a mirage because the lifting of the automatic stay removed this matter from "the system provided by [the Code]." Section 362(a)(7) is thus inapplicable and cannot create a conflict with state law in the present litigation.
 
 
 15
 We thus turn to state law. For reasons stated below, we affirm on the ground that a subsequently arising setoff, such as that claimed by Inland/Ryerson, cannot take priority over a perfected security interest in receivables under New York's Uniform Commercial Code Article 9 ("U.C.C."). Because of this disposition of the case, we need not reach the "battle of the forms" issue.
 
 
 16
 Section 9-104(i) excludes "any right of set-off" from the coverage of U.C.C. Article 9. This exclusion is of no aid to Inland/Ryerson, however. We agree with the other courts that have addressed this question that Section 9-104(i) does no more than exempt holders of setoff rights from the filing requirements of Article 9 and does not "remov[e] commercial transactions or conflicts from the operation of the UCC whenever the priority of a set-off is involved." Griffin v. Continental Am. Life Ins. Co., 722 F.2d 671, 673 (11th Cir.1984) (reporting response of Georgia Supreme Court after certification of question); see also, e.g., Citizens Nat'l Bank of Whitley County v. Mid-States Dev. Co., 177 Ind.App. 548, 380 N.E.2d 1243, 24 U.C.C. 1321, 1328 (3d Dist.1978); Associates Discount Corp. v. Fidelity Union Trust Co., 111 N.J.Super. 353, 268 A.2d 330, 7 U.C.C. 1350 (1970). But see, e.g., State Bank of Rose Creek v. First State Bank, 320 N.W.2d 723, 725 (Minn.1982). New York courts would surely reach the same conclusion and indeed have done so sub silentio by treating setoffs within the priority provisions of Article 9 of the U.C.C. See, e.g., Bank Leumi Trust v. Collins Sales Service, Inc., 47 N.Y.2d 888, 419 N.Y.S.2d 474, 393 N.E.2d 468, 27 U.C.C. 582 (1979) ("Bank Leumi II" ); Matter of Chase Manhattan Bank (N.A.) v. State of New York, 40 N.Y.2d 590, 388 N.Y.S.2d 896, 357 N.E.2d 366, 20 U.C.C. 577 (1976).
 
 
 17
 Turning, therefore, to the effect of Article 9 on a conflict between a setoff claimant and a holder of a security interest in receivables, we draw our understanding of New York law principally from Bank Leumi II, 47 N.Y.2d 888, 419 N.Y.S.2d 474, 393 N.E.2d 468, aff'g Bank Leumi Trust v. Collins Sales Service, Inc., 65 A.D.2d 735, 410 N.Y.S.2d 617 (1st Dep't 1978) ("Bank Leumi I" ) (collectively "Bank Leumi" ). In Bank Leumi, after an assignment of accounts receivable, a corporation attempted to set off against its own debt to the assignor a credit owed to another corporation with the same principal officer and shareholder. The setoff claim was contested by the assignee of the accounts receivable. Like the present case, therefore, Bank Leumi involved a fund in the hands of an account debtor (here Ryerson) claimed by the assignee (here MNC) of accounts receivable that included that fund, but arguably subject to a setoff on behalf of a third party (here Inland), related to the debtor.
 
 
 18
 Conflicts between setoff claimants and holders of a security interest in receivables are not expressly resolved by Article 9. See Note, Conflicts Between Set-Offs and Article 9 Security Interests, 39 Stan.L.Rev. 235, 236 (1986). Accordingly, in Bank Leumi I, the First Department looked to the fallback rules of U.C.C. Sec. 9-312, which provides a "first in time, first in right" rule.[3] Under this rule, the first creditor to perfect its security interest takes priority over any subsequently arising interest in the absence of contrary U.C.C. provisions. Reasoning that, under Section 9-312, "[a] perfected security interest must prevail over presumably subsequent unperfected security interests," the First Department held in Bank Leumi I that subsequently arising setoffs could not defeat a duly perfected security interest in receivables. 65 A.D.2d at 735, 410 N.Y.S.2d 617.
 
 
 19
 On appeal, the Court of Appeals affirmed "for the reasons stated at the Appellate Division." Bank Leumi II, 47 N.Y.2d at 889, 419 N.Y.S.2d 474, 393 N.E.2d 468. The Court of Appeals also commented upon the argument that the setoff was a defense to the assignee's action for the receivables under U.C.C. Sec. 9-318.[4] It held that Section 9-318 was inapplicable because the agreed-upon setoff was not a defense "which would negate [the account debtor's] obligation to pay [the assignor]," but was merely "a collateral agreement in which the method of payment ... was established." Id. at 890, 419 N.Y.S.2d 474, 393 N.E.2d 468. The court left open the question whether a setoff would be a defense under Section 9-318 where an intercorporate transaction between the third-party-setoff claimant (Inland) and the account debtor (Ryerson) led to the assumption by the account debtor of the third party's claim against the assignor (Ramco). See id. In those circumstances, of course, the account debtor would own the claim against the assignor. No argument is made that Ryerson owns Inland's claim against Ramco. Viewed in the light most favorable to Ryerson, therefore, the claimed contract with Ramco as to the setoff established at best "a collateral agreement [regarding] the method of payment" that did not alter Ryerson's underlying obligation. Bank Leumi I 's interpretation of Section 9-312 with regard to subsequently arising setoffs for claims of third parties thus controls the instant matter. The setoffs here clearly arose subsequent to the perfection of MNC's security interest in Ramco's receivables, and the "first in time, first in right" rule accords priority to MNC's claim.[5]
 
 
 20
 Accordingly, we turn to Ryerson's defense that MNC's disposition of Ramco's inventory was not commercially reasonable under U.C.C. Sec. 9-507, and that Ryerson is therefore entitled to an accounting. MNC contends in response that Section 9-507 does not empower parties in Ryerson's position to recover for allegedly unreasonable disposition of collateral. We agree with MNC.
 
 
 21
 U.C.C. Sec. 9-507 limits such relief to "the debtor or any person entitled to notification." The U.C.C. defines "debtor" as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral...." U.C.C. Sec. 9-105(1)(d). This definition has been held to extend the protections of Section 5 of Article 9 to guarantors. See, e.g., Chase Manhattan Bank, N.A. v. Natarelli, 93 Misc.2d 78, 401 N.Y.S.2d 404, 23 U.C.C. 539 (Sup.Ct. Monroe Cty.1977). Ryerson is not, however, in the position of a guarantor bound to satisfy an obligation incurred by the debtor to a third party. Rather, Ryerson's obligation to pay Ramco was completely independent of whether Ramco had debt, and it has understandably been held that a party in Ryerson's position is not entitled to the protections of Section 5 of New York's Article 9. American Express Int'l Banking Corp. v. Sabet, 512 F.Supp. 463, 30 U.C.C. 271, 280 (S.D.N.Y.1980) ("[T]o extend the provisions of Secs. 9-504, -505 and -507 to cover a party whose obligations are wholly independent from those of the pledgor providing the collateral at issue, and who has no right of recourse against the collateral either via subrogation or under a claim for contribution or reimbursement from a co-obligor ... goes far beyond [the law of the State of New York]...."). We believe this reasoning is a sound interpretation of New York law and that Ryerson cannot rely upon the fortuitous fact that Ramco had other obligations in order to defeat its own, independent debt to Ramco. Whether the disposition of the inventory was reasonable affects the entire estate, and MNC is, as noted, obligated to account to the trustee for all monies collected.[6]
 
 
 22
 Affirmed.
 
 
 
 [1]
 Title 11 U.S.C. Sec. 362 states in pertinent part:
 (a) * * * [A bankruptcy] petition ... operates as a stay, applicable to all entities, of--
 * * *
 (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title....
 
 
 [2]
 Moreover, under federal bankruptcy law, a subsidiary's debt may not be set off against the credit of a parent. See In re Berger Steel Co., 327 F.2d 401 (7th Cir.1964) (involving Ryerson and Inland in triangular relationship more or less identical to the one at bar). Berger remains the law under the new Code. See, e.g., In re Virginia Block Co., 16 B.R. 560, 5 C.B.C.2d 317, 319 (Bankr.W.D.Va.1981); In re Elcona Homes Corp., 863 F.2d 483 (7th Cir.1988); cf. 4 Collier on Bankruptcy p 553.01, at 553-6 (15th ed. 1989) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 377 (1977), at 185) (New Code has restricted, not expanded, setoff rights)
 
 
 [3]
 At the time of Bank Leumi I, Section 9-312 read in pertinent part:
 In all cases not governed by other rules stated in this section ... priority between conflicting security interests in the same collateral shall be determined ... (a) in the order of filing if both are perfected by filing ...; (b) in the order of perfection unless both are perfected by filing ...; (c) in the order of attachment under Section 9-204(1) so long as neither is perfected.
 N.Y.U.C.C. Sec. 9-312 (McKinney 1964). It was amended in 1978 and now reads in pertinent part:
 In all cases not governed by other rules stated in this section ... priority between conflicting security interests in the same collateral shall be determined according to the following rules: (a) Conflicting security interests rank according to priority in time of filing or perfection.
 N.Y.U.C.C. Sec. 9-312 (McKinney Supp.1989). The section as amended does not alter in any pertinent respect the "first in time, first in right" rule under which Bank Leumi v. Collins Sales Service, Inc., 65 A.D.2d 735, 410 N.Y.S.2d 617 (1st Dep't 1978), aff'd, 47 N.Y.2d 888, 419 N.Y.S.2d 474, 393 N.E.2d 468 (1979), was decided. See J. White & R. Summers, Uniform Commercial Code Sec. 25-4 (1980).
 
 
 [4]
 Section 9-318, the pertinent part of which has not been amended since Bank Leumi, limits the claims of an assignee such as MNC, subjecting its rights to "all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom."
 
 
 [5]
 Section 9-201's general priority for secured interests has elsewhere been interpreted to give priority to perfected security interests in receivables over setoffs regardless of when the setoffs arose. See, e.g., Griffin v. Continental Am. Life Ins. Co., 722 F.2d 671, 672-74 (11th Cir.1984) (reporting response of Georgia Supreme Court after certification of question). There is no authoritative New York decision addressing that issue, however
 
 
 [6]
 Whether MNC reasonably disposed of Ramco's inventory has been litigated in bankruptcy court. See Erlanger & Company, Inc. v. William E. Lawson, as Trustee in Bankruptcy of Ramco/Fitzsimmons Steel Co., Inc., Debtor, and Maryland National Industrial Finance Corp., (W.D.N.Y. No. 85-11887, Adversary Proceeding No. 86-1325M) (decision pending). That decision has, of course, no bearing on our own