**In re the GIBSON GROUP, INC., Debtor.**

**ATLANTIC KRAFT CORPORATION, Movant,**

v.

**The GIBSON GROUP, INC., Respondent.**

**Bankruptcy No. 1–90–00280.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 29, 1991.

---

Jeffrey Marks, Cincinnati, Ohio, for CP Forest.

Gerald L. Baldwin, Cincinnati, Ohio, for Atlantic Kraft.

Louis Solimine, Cincinnati, Ohio, for debtor.

Charles Caldwell, Assistant U.S. Trustee, Cincinnati, Ohio.

## INTERLOCUTORY ORDER ON MOTION FOR RELIEF FROM STAY

BURTON PERLMAN, Chief Judge.

Atlantic Kraft Sales, Inc. (hereafter "movant") filed a motion for relief from the automatic stay "to effectuate a setoff pursuant to 11 U.S.C. § 553."

In its memorandum in support of its motion, movant said that debtor was indebted to it in the total amount of $1,549,338.54, and that movant had filed a proof of claim in that amount. In its memorandum, movant further says that it was indebted, on account of prepetition debt, to debtor in the total amount of $162,403.80. Movant seeks relief from the stay so that it may eliminate its indebtedness to debtor, and reduce its claim against debtor by the same amount.

In response to the motion, a secured creditor of the debtor, Canadian Pacific Forest Products, Ltd. ("CP Forest") sought an opportunity to be heard. In a memorandum, CP Forest said that it had a security interest in debtor's accounts receivable, including the sums owing from movant to debtor as to which movant, by its present motion, seeks authority to set off. In its memorandum, CP Forest, among other issues, raised the question of whether the security interest of CP Forest in debtor's accounts receivable had priority over any setoff rights of movant.

A preliminary hearing was held on the motion for relief from stay. At the preliminary hearing, it developed that the debtor has no interest in the present controversy, and the real parties in interest to this controversy are movant and CP Forest. While evidentiary matters will have to be resolved at a final hearing, at the preliminary hearing the parties agreed that there was a legal issue which could profitably be resolved prior to the conducting of any discovery by the parties. The issue may be formulated as whether, assuming arguendo that movant had knowledge of the security interest of CP Forest, movant could exercise its right of setoff over the objection of CP Forest. Otherwise stated, the limited present issue is whether the security interest of CP Forest has priority over the setoff right of movant.

CP Forest and movant briefed the issue as so formulated. It is the position of CP Forest that § 9–318(1)[1] of the Uniform Commercial Code governs the respective priorities here at issue. CP Forest says that the critical factual issue which will determine the outcome of the priority dispute is whether under § 9–318(1)(b), movant "received notification" of CP Forest's security interest in debtor's accounts receivable before movant's claim against debtor "accrued".

---

1. The parties here have employed section designations of the Uniform Commercial Code in their discussion, and so shall we. Those sections are to be found in the Ohio Revised Code as follows: UCC § 9–318 is O.R.C. § 1309.37; UCC § 9–306 is O.R.C. § 1309.25; UCC § 9–104 is O.R.C. § 1309.04; UCC § 9–312 is O.R.C. § 1309.31.

In its memorandum, CP Forest anticipates that movant will argue that UCC § 9–318(1) does not control the present priority dispute, and will rely on UCC § 9–104(i) as support for that position. To that argument, CP Forest responds that the majority view is that § 9–104(i) should be construed narrowly, that it merely relieves a party asserting a right of setoff from the attachment and filing provisions of Article 9 of the UCC, but does not remove setoffs from Article 9 when a right of setoff conflicts with the interests of an Article 9 secured creditor. Further, in support of its position, CP Forest calls attention to UCC § 9–306(4)(d), saying that the provision there would have been entirely superfluous had it been the intention to interpret UCC § 9–104(i) literally.

For its part, movant contends that in order for UCC § 9–318 to be here relevant as contended by CP Forest, one must interpret the words "notice of assignment" in § 9–318 as equivalent to existence of a perfected security interest, and movant contends that this equivalence is unsound. It is the core of the position of movant that it is only after a debtor defaults and there is notice of the secured party's actual assignment of accounts receivable to the debtor, that a valid assignment for UCC purposes occurs.

Movant says that the pivotal issue is not whether debtor received notification of CP Forest's security interest before movant's claims accrued, but whether movant received "notification of [an] assignment," as prescribed by § 9–318(1)(b) and (3). There cannot have been such notification because, says movant, CP Forest did not have an assignment of receivables until default on January 10, 1990, and never gave movant the requisite notice.

In its responsive memorandum, CP Forest argues that default is not a necessary precondition before an assignment can be found for purposes of UCC § 9–318.

With respect to the threshold question of law which has been presented to us, we have reached the conclusion that the state of knowledge of movant regarding the security interest of CP Forest is irrelevant in determining the outcome of their controversy. The outcome turns, not on knowledge of a prior security interest, but rather upon priority in time of the security interest. That is, if the security interest of CP Forest was perfected before the setoff right of movant arose, then CP Forest will prevail. If the setoff right of movant arose before the security interest of CP Forest was perfected, then movant will prevail, and its setoff allowed. This analysis, of course, requires the initial holding that the holder of a right of setoff is to be regarded as a secured party for present purposes.

That a right of setoff is to be treated as a security interest for Uniform Commercial Code purposes in a conflict with the holder of a secured claim, is the effect of the holding of the court in *MNC Commercial Corp. v. Joseph T. Ryerson & Son,* 882 F.2d 615 (2nd Cir.1989). We believe that treatment to be correct and to be reinforced for a bankruptcy context by 11 U.S.C. § 506(a), which expressly defines a setoff as a secured claim. Having concluded that what is before us is a question of priority as between secured claims, and the parties being in agreement that the UCC is applicable in resolving the present controversy, we look to UCC § 9–312 to resolve that conflict. UCC § 9–312 (O.R.C. § 1309.31) in pertinent part provides:

**§ 1309.31 (UCC 9–312) Priorities among conflicting security interests in the same collateral.**

\* \* \* \* \* \*

(E) In all cases not governed by other rules stated in this section, including cases of purchase money security interests which do not qualify for the special priorities set forth in divisions (C) and (D) of this section, priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(1) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is ear-

lier, provided that there is no period thereafter when there is neither filing nor perfection.

\* \* \* \* \* \*

While issue may be taken with our characterization of setoff in view of § 9–104(i) which excludes "any right of setoff" from the coverage of Article 9 of the UCC, that exclusion is not absolute. As stated by the court in *MNC Commercial Corp., supra,* at p. 619:

Section 9–104(i) excludes "any right of setoff" from the coverage of U.C.C. Article 9. This exclusion is of no aid to Inland/Ryerson, however. We agree with the other courts that have addressed this question that Section 9–104(i) does no more than exempt holders of setoff rights from the filing requirements of Article 9 and does not "remov[e] commercial transactions or conflicts from the operation of the UCC whenever the priority of a set-off is involved." (Citations omitted.)

Our resolution of the issue before us focuses on UCC § 9–312 rather than UCC § 9–318, the latter being the statutory provision upon which the discussion of the interested parties centers. We must do so because CP Forest simply is not at this time an assignee of debtor's accounts receivable. It has taken no action to vindicate its rights as to its collateral. Bearing in mind that we are in the preconfirmation phase of a chapter 11 case, it seems to us unwise to treat a party with respect to its rights other than precisely in accordance with its current status.

Our analysis avoids the relevance of cases such as *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185 (7th Cir.1990). In that case, it is true that setoff rights were held to prevail over those of a secured creditor. The controversy there, however, was quite different from that before us. There, a creditor secured by accounts receivable brought suit on an account. Defendant asserted a right to setoff, which setoff had been accomplished prior to the suit. Defendant there prevailed because under state law it was expressly entitled to assert setoff as a de-

fense to plaintiff's claim. Here, the right to setoff has not been exercised and it is not being asserted as a defense: we have here a controversy presented directly, not implicitly, as one of priority.

This case is also distinguishable from those such as *In re Metropolitan Hospital,* 110 B.R. 731 (Bankr.E.D.Pa.1990) where specific federal statutes conferred on a governmental authority a right to set off which took priority over the claim of a secured creditor.

This is an interlocutory order. The clerk will now set this matter for final hearing.

So Ordered.