THE FIRST NATIONAL BANK OF DETROIT AND THE MERCHANTS' AND MANUFACTURERS' NATIONAL BANK OF DETROIT v. THE E. T. BARNUM WIRE & IRON WORKS ET AL.

*Set-off by trustee of corporation against individual claim.*

1. Where money was placed by a corporation in the hands of its general manager, as trustee, for safe-keeping, and to be paid out in the ordinary course of its business, such trustee cannot offset a debt due to him by the corporation against the moneys in his hands, after a voluntary assignment by the corporation for the benefit of its creditors.

2. A set-off may be allowed in equity in the same cases in which they are allowed at law.

3. A debt accruing to a person in his individual capacity cannot be set off against a debt due from him as trustee.

Appeal from Wayne. (Jennison, J.) June 12–16.—September 29.

Proceedings on petition of the Receiver of defendant corporation to compel payment of moneys by Charles Bewick, general manager of said corporation. Bewick appeals. Affirmed.

*Moore & Canfield* for the Receiver.

*Otto Kirchner* for respondent appellant.

CHAMPLIN, J.   Proceedings were instituted by the complainants in the circuit court for the county of Wayne, in chancery, to carry into effect a common-law assignment made by the E. T. Barnum Wire & Iron Works, in which proceedings Abram L. Stebbins has been appointed receiver.   The receiver filed his petition in the cause to compel Charles Bewick to deliver to him the sum of $11,900, which the petitioner claims as the assets of the assignor in the possession of said Bewick.

The Wire & Iron Works is a corporation organized under chapter 1 of Act No. 187, Laws 1875 (How. Stat. p. 1051).   It provides (section 6) that the business of the corporation shall be managed by a board of directors, and (section 8) that its officers shall consist of a president, a vice-president, a secretary and a treasurer, and "such other officers as the by-laws of the corporation shall prescribe."   The by-laws of the corporation (article 5, title "Officers") do not provide for any officers in addition to those named in the constituting act. They do, however, provide (article 6, title "President") that, in addition to the usual duties, the president shall "act as general manager, and shall have full authority and supervision over the active business affairs of the company, and its officers and employes."   During all the time covered by the transaction in litigation, Mr. E. T. Barnum was both the president and treasurer of the Works.   For some time the Works had been in straitened circumstances.   It was represented to Mr. Bewick that they were caused by over-manu-

facturing, and that a loan of ready money would tide the concern over its difficulties. Relying upon these representations, he advanced to it a large sum of money upon its note, dated June 16th, 1884, for $26,166.67, payable on demand. It remains wholly unpaid, except the sum of $7,333.33 indorsed thereon.

The respondent Bewick is a stockholder in the corporation. In or about May last he was elected a director, and continues to hold that office. Up to July 3d the office of business manager, or general manager, was filled by Mr. E. T. Barnum. On that day Mr. Barnum resigned, and Bewick was chosen general manager in his place. He is still the business manager, having never resigned the office. At or about the time Bewick entered upon the duties of general manager the company became financially embarrassed and insolvent. On the 28th day of July the Works made an assignment for the benefit of creditors. In the interval, fearing garnishment of its bank accounts with the First and Merchants' & Manufacturers' National Banks of Detroit, it ceased its deposits with them, and it was arranged by the directors, or with their consent, that its moneys should be placed in the hands of Mr. Bewick, as trustee, instead of being deposited with said banks. He gave his receipts for the money—four in number—the first receipt bearing date July 10th, 1884, and the last July 28th of the same year; aggregating in amount $14,300. One of the receipts is signed "Charles Bewick," simply, and all the others are signed "Charles Bewick, Trustee." These funds were deposited by Mr. Bewick with the German-American Bank in the name of "Charles Bewick, Trustee." This was done for the purpose of keeping them separate from other funds which he had on deposit in that bank. He arranged that any money which the corporation might need to use in the course of its business should be paid out of the money received by him, and for this purpose he signed blank checks by the name of "Charles Bewick, Trustee," which he left with Mr. Deacon, the book-keeper of the corporation, with directions to fill up and use as needed. Twenty-four

hundred dollars were thus used previous to the assignment, leaving in his hands $11,900.

On the same day upon which the last money (being $1500) was placed in Mr. Bewick's hands as trustee, the corporation made a general assignment for the benefit of its creditors. There had been talk previous to this of their closing down, and Mr. Bewick, as manager, had given direction to the several foremen to close down on that day. He had caused an inventory to be taken, and had formed an opinion that the assets of the corporation would not pay over fifty cents on the dollar of its liabilities. An inventory was prepared, to be filed in accordance with the statute, after the assignment was made, concerning which the record contains the following:

"It is stipulated and agreed that with the assignment of the said defendant, the E. T. Barnum Wire & Iron Works, there was filed an inventory, a part of which is in the words and figures following, to wit:

ASSETS.

| | |
|---|---:|
| Cash on hand, - - - - - - - | $   612 72 |
| in First National Bank of Detroit, - | 1,163 88 |
| in M. & M. National Bank, - - - | 34 23 |
| in hands of C. Bewick, - - - - | 11,900 00 |
| | $13,710 83 |

It is agreed that there is annexed to the said inventory the following affidavit:

*State of Michigan, County of Wayne—ss.*: Charles Bewick, of said county, being duly sworn, says that he is the general manager of the E. T. Barnum Wire & Iron Works, in whose behalf he makes this affidavit, and that the annexed and foregoing inventory of the assigned property of the said E. T. Barnum Wire & Iron Works, and list of creditors, are full and true, to the best of his knowledge, information, and belief.

[Signed]        CHARLES BEWICK, General Manager.

Subscribed and sworn to before me this 7th day of August, A. D. 1884.

WILLIS G. CLARK,

Notary Public in and for Wayne County, Michigan.

The above inventory was filed on the 7th day of August, 1884, in the office of the county clerk for the county of Wayne."

The testimony respecting Mr. Bewick's knowledge of what the inventory contained is conflicting. He testifies that he was not aware that the item of moneys in his hands was contained therein, and that he was advised that his verification was merely a formal matter. On the other hand, a witness who was present testifies that Mr. Ferry and Mr. Bewick made a careful examination of the inventory, and in some instances compared it with the books, and that this item of $11,900 was spoken of at that time. Mr. Ferry was not called.

Afterwards, at the suit of various creditors, Mr. Stebbins, the appellee, was appointed receiver of the Works. He made a demand upon Mr. Bewick for the sum last named, which was refused upon the ground that the indebtedness of the Works upon its note to Mr. Bewick was a legal set-off against the receiver's claim against him. The court below, on the receiver's petition, made an order directing Mr. Bewick to pay the money to the receiver. From that order Mr. Bewick appeals.

The only question presented by the record is whether the indebtedness of the Works on the note may be set off against the moneys so deposited by the Works with Mr. Bewick.

It is not claimed on behalf of the petitioner that there was any fraud committed by the arrangement under which Mr. Bewick received the money. It was made at a time when it was supposed that by keeping control of its means the corporation would be able to continue business and pay its indebtedness. Yet, in view of the facts, it cannot be doubted that the object was to conceal its funds, and place them beyond the reach of creditors who might attempt to collect their debts by proceedings in garnishment. This the law does not condemn unless such action is taken with the intent to hinder, delay or defraud creditors. No such intent is manifest in this case. There is no authority shown from the board of directors authorizing respondent to apply the money

placed in his hands to the payment of the note held by him. The circumstances repel any such inference, and he does not claim that he was authorized by the board to make such appropriation. The case does not therefore come within the range of those decisions where the directors of a failing corporation have preferred one of their number to the exclusion or detriment of other creditors.

Neither is it of any importance that Mr. Bewick was a stockholder and director of the corporation, except so far as those facts may bear upon the good faith of the transaction. The money was not placed in his hands because he was a stockholder, neither did he receive it in his official capacity as director ; but it was placed in his hands as a depositary, in trust ; to use the words of Mr. Bewick, " It was there kept in my charge for safe-keeping ; " and his right to retain it to offset the corporation's indebtedness to him must be determined by the same principles which would be applied to any other creditor receiving like funds in trust, under the same circumstances, and with the same knowledge of the affairs of the corporation.  In this equitable proceeding the same principles relating to the right of set-off will be applied as are applied in proceedings at law ; and if at law, in a suit to enforce the payment of this money, he would be entitled to offset his note, he will be permitted to do the same here.  2 Story's Eq. Jur. § 1437.

This leads us to inquire in what relation he stands to the corporation with reference to the $11,900.  If it was deposited with him the same as if he was a banker, with the right to use this money in his own business, or for any purpose he chose, as bankers have in case of a general deposit, there can be no doubt that the relation between him and the corporation was that, simply, of debtor and creditor, and he would have the right of offsetting his note against the demand for this money.  If, on the other hand, the transaction was such that he is to be considered the bailee of the corporation with respect to this money, and it could legitimately be applied only to the uses and purposes of the corporation under the trust imposed, then he is not a creditor of the corporation

58 MICH—9

with respect to this money. In the latter case, the money being held in a different right than the money due to him on the note, it cannot be offset against it either at law or in equity. The debts would not be mutual; neither would they be debts accruing in the same right. And although debts accruing in different rights may under special circumstances, where the proof is clear and the equity very strong, be set off, yet there is nothing in the facts and circumstances of this case to bring it within the exception. He claims that the money for which the note was given was obtained by assurances and representations made by the president and general manager, that although the corporation was in straitened circumstances and in need of money, yet the corporation was entirely solvent, and was doing business at a profit, and only needed this money for a short time to tide it over until sales and collections could be made; which representations he claims were false, but upon the faith of which and relying upon their truth, he loaned them the money.

These facts do not create such an equity as would entitle respondent to hold the money as an offset. He was a director in the corporation, and it was his duty to know its financial standing, and it is to be presumed that other creditors who did not stand in official relation and had no opportunity or means of judging of the financial condition of the corporation trusted the concern upon the faith of its being solvent, whose equities, at least, are equal to respondent's.

The controlling facts are that the money was received by him as trustee. The trust was that he should keep it safe, and use it in the business affairs of the corporation. There is no analogy between these facts and that of a banker and his depositor. The banker who receives a general deposit from his customer undertakes, in consideration of the loan of the money and the right to use it as he pleases, to refund the same amount at one time or in parcels, as shall suit the convenience of the depositor; and the depositor is at liberty to draw his check for such amounts upon the banker, which it is the banker's duty to pay. This was not the transaction between

these parties.  Here the money was placed in Bewick's possession for safe-keeping, to be used as the business, not of Bewick, but as the corporation required; not to be drawn upon by the check of the corporation, but to be applied by Bewick in accordance with the terms of the trust.  It needs no argument to show that any remaining money not so used and applied remained the money of the corporation.  It did not, in placing it in Bewick's hands, part with the title to the money.  There is no fact or circumstance which indicates such design.  On the contrary, it regarded the money as its property, embraced it in its inventory as assets of the corporation, and the correctness of this inventory is verified by the affidavit of the respondent.

These facts distinguish the case from *Scammon v. Kimball* 92 U. S. 362, cited by counsel for respondent as supporting his claim of set-off.  There the facts showed that Scammon, who was a private banker, received the funds of the insurance company of which Kimball was assignee, as general deposits, paid interest on them, and they were drawn out by checks of the insurance company as suited its convenience. The company was also indebted to him for losses by fire which it had insured against.  The court held that these were mutual debts, which might be offset.  The insurance company also held his notes given for stock for which he had subscribed and had not paid, and the court held that these notes could not be set-off against such losses, for the reason that equity regards the capital stock and property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue such property into whosoever possession the same may be transferred, unless it has passed into the hands of a bona fide purchaser. The principle there laid down would prevent the money in question being applied or held as a set-off against the note of the corporation due Bewick, for the reason that at the time of the assignment the title of the money was in the corporation and passed to the assignee, and constituted a trust fund for the payment of the corporation debts pro rata.  With respect to this money the respondent occupies no better posi-

tion than he would if he had obtained possession of some of the machinery or manufactured articles belonging to the corporation and sought to retain them to satisfy his debt. *Key v. Flint* 8 Taunt. 21; *Buchanan v. Findlay* 9 B. & C. 738.
. The order appealed from is affirmed with costs.

The other Justices concurred.