**Elaine A. McREYNOLDS, Commissioner, Department of Commerce and Insurance, State of Tennessee,**

**v.**

**CHEROKEE INSURANCE COMPANY, Plaintiff/Appellant.**

**In re Drury FISHER, III, Alexander & Company, Inc., and D.A. Fisher, Inc., Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 26, 1990.

Application for Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

William B. Hubbard, Littleton, Weed & Hubbard (Susan L. Kay, of counsel), Nashville, for plaintiff/appellant.

A. Scott Derrick, Gullett, Sanford, Robinson & Martin, Nashville, for defendants/appellees.

## OPINION

TODD, Presiding Judge.

The brief record transmitted to this Court does not include the origin of or prior proceedings in the captioned case which apparently originated as a "Delinquency Proceeding" for the purpose of rehabilitation and/or liquidation of an insurance company under Tenn.Code Ann. Title 56, Chapter 9.

The technical record of this appeal begins with a petition for contempt and complaint against Alexander & Company, Inc., and D.A. Fisher, Inc., and their president, Drury A. Fisher, seeking enforcement of orders requiring delivery to the receiver of property and funds of Cherokee.

A summary judgment was entered dismissing contempt charges against all defendants.

At the close of plaintiff's evidence, the suit against Drury A. Fisher, III was dismissed.

After the completion of the trial, the Trial Judge awarded judgment in favor of the receiver against D.A. Fisher, Inc., for $20,929.19, plus $180.24 attorney's fees and against Alexander & Company, Inc., and D.A. Fisher, Inc., jointly for $9,319.76 attorneys fees and costs.

The receiver has appealed and presented a single issue as follows:

Whether the trial court erred in allowing the defendant insurance agencies to set-off their profit share against the premiums which they illegally withheld from the insurance company.

It is undisputed that both corporate defendants had identical agency contracts which authorized them to act as agents for Cherokee in issuing policies of insurance and requiring them to remit payments in the following manner:

(7) *Accounts of money due the Company on the business placed by the Agent with the Company* are to be rendered monthly so as to reach the Company's office not later than the 10th day of the following month: The balance therein shown to be due to the Company shall be paid not later than 45 days after the end of the month for which the account is rendered. Failure by Agent to make all payments when due shall justify action by Company which may at Compa-

ny's option and immediately upon written notice include any one or more or all of the following: (A) Suspension of agent's authority to accept risks, issue policies or otherwise bind Company under this agreement, (B) Termination of this agreement without giving 60 days notice as required by paragraph 11, or (C) To require an immediate accounting in the event of termination of this agreement an accounting shall be made forthwith and balances shall then be immediately due and payable in the event it becomes necessary to place in the hands of an attorney for collection any unpaid balances. The Agent hereon agrees to pay a reasonable attorney's fee and all the costs of collection thereby incurred. (Emphasis supplied)

The contract requires the agent to remit "accounts due the company on the business placed by the agent with the company," but does not specify whether this means "premiums accrued" or "premiums collected." The evidentiary record is equally unclear on this point. It is inferable from the entire record that the agent became liable to Cherokee for the premium on each policy issued regardless of whether or not collected from the policyholder.

Attached to said agreement was an unsigned document entitled "Profit Sharing Plan," the pertinent provisions of which were:

The Cherokee Insurance Company, hereinafter referred to as the Company, will SHARE WITH the Agent THE PROFIT earned on policies written in the Company by the Agent during the PROFIT SHARING year (except brokerage business sent to the Agent by the Company) on the following basis:

A. The PROFIT SHARING year will commence on January 1 and extend through December 31.

B. Participation under this plan commences with the first dollar of premium written by the Agent with the Company.

C. In computing Net Earnings. Net Premiums written will include all lines unless exceptions are agreed upon.

D. The PROFIT SHARING factor will be twenty-five per cent (25%) until the written premium recorded on the books of the Company exceeds $50,000 during the PROFIT SHARING year and then the factor will be fifty per cent (50%).

E. Net Earnings will be computed according to the following formula.

\* \* \* \* \* \*

5. At the expiration of each PROFIT SHARING period, the Company will, within a reasonable time prepare a PROFIT SHARING statement according to the formula outlined in this Agreement and will pay to the Agent the amount found to be due, provided all premiums written during the PROFIT SHARING period have been paid to the Company by the Agent. No charge or deduction for PROFIT SHARE will be made or claimed by the Agent in his accounts.

The Trial Court found that D.A. Fisher, Inc. owed Cherokee $15,669.50 for premiums plus $6,948.59 interest and that Cherokee owed D.A. Fisher, Inc. $1,688.90 for share of profit, and judgment was rendered against D.A. Fisher, Inc. for $20,929.19.

The Trial Judge found that Alexander & Co. owed Cherokee $2,989.87 for premiums plus interest of $1,151.32 and that Cherokee owed Alexander & Co. $4,321.43 for share of profit. No judgment was rendered against Alexander for premiums because the Trial Court found that the claim for premiums was satisfied by the amount of profit due from Cherokee. No claim was made and no judgment was rendered in favor of Alexander & Co. for the excess of profit over premium.

Judgment was rendered against both corporations for $9,319.76 and against D.A. Fisher, Inc. for $180.24 attorney's fees.

The Trial Judge explained the treatment of premiums and profit as follows:

Defendant Fisher claims that it was customary for insurance agencies to apply a set-off for profit share to any premiums paid to Cherokee. On the contrary, Mr. Akin testified that the distri-

bution of profit share was a separate function in Cherokee from collection of premium accounts and was handled by different personnel. He testified that Cherokee always checked to see if agents' premium accounts were fully paid prior to the payment of any profit share. The amount of profit share due each agency could not be accurately calculated until the end of the year. The profit sharing plan which governed both defendant agencies (exhibit # 2) specifically prohibits agencies from setting off profit share against premiums. The Court holds that defendant agencies were obligated to pay the premiums due to Cherokee in a timely fashion and had no right to withhold anticipated profit share at the time payment of premiums was due. The Court, however, will setoff the amount of profit share due defendant agencies from the judgment for unpaid premiums, interest and attorneys' fees.

Prior to the filing of the delinquency proceeding, the defendants were evidently content to remit premiums promptly when due and to wait until the end of the year for their share of the profit. When the receivership was initiated, the defendants delayed payment of premiums in order to offset them against profit share, thereby to assure the receipt of the profit share. The Trial Judge did not approve this device, but the result of the judgment is to give the defendants the full benefit of their share of the profit instead of the possibility of a prorata distribution by an insolvent estate to unsecured creditors.

The receiver argues that the defendants are not entitled to credit for their share of profit because the contract requires remittance of premiums without any such deduction. It is true that the contract required remittance of premiums by defendant within 45 days after the end of the month in which the premium accrued, and that the "Profit Sharing" section required payment of share of profit to the defendants within a reasonable time after the end of the calendar year in which the profit accrued.

The receiver cites no authority for disallowing credit for an amount due a defendant on a date different from the due date of defendant's obligation to plaintiff.

Prior to the promulgation of the present Rules of Civil Procedure, the pleading and practice as to counterclaims was regulated by statute. *Caruthers History of a Lawsuit,* Eighth Edition, § 242, pp. 288, 289. Such statutes are now repealed except for Tenn.Code Ann. §§ 20–6–401, –402, –403, which provide:

> **20–6–401. Setoff by surety or comaker.**—A comaker or surety, when sued alone, may, with the consent of his comaker or principal, avail himself, by way of setoff, of any of the debts or demands, held by such comaker or principal against the plaintiff at the commencement of the action, and matured when offered in setoff, but the plaintiff may meet it in the same way as if made by the comaker or principal himself.
>
> **20–6–402. Costs on equal demands.**—On a plea of setoff or recoupment, if the demand of defendant equals the demand of the plaintiff, judgment for all costs is to be rendered for defendant.
>
> **20–4–403. Judgment molded to facts.**—When there are several defendants, the verdicts and judgments, whether the pleadings by them are joint or several, shall be molded, according to the facts, and to meet the exigencies of the case.

Also, Tenn.Code Ann. §§ 25–1–103, –104, –105 provide:

> **25–1–103. Setoff of Judgments.**—Judgments of the same court may be setoff against each other on motion, but not so as to defeat liens of attorneys or to circumvent the exemption laws.
>
> **25–1–104. Several parties.**—Judgments may be given for or against one or more of several plaintiffs, or for or against one or more of several defendants. In such case, the verdict shall be as the right may appear, and shall state separately any amount allowed to or against any of the parties.
>
> **25–1–105. Judgment molded to facts.**—Such and so many judgments,

joint, separate, and cross, may be rendered as may be necessary to the rights of the parties, or one (1) amount may be setoff against another and judgment rendered for the residue, or judgment may be rendered for the defendant against the plaintiff for any amount or balance for which it is found that the plaintiff is liable.

Tennessee Rules of Civil Procedure Rule 13 provides in pertinent part as follows:

### 13.01 Compulsory Counterclaims

A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject of another pending action. This rule shall not be construed as requiring a counterclaim to be filed in any court whose jurisdiction is limited either as to subject matter or as to monetary amount so as to be unable to entertain such counterclaim.

\* \* \* \* \* \*

### 13.02 Permissive Counterclaim

A pleading may state as a counterclaim any claim against an opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

\* \* \* \* \* \*

### 13.03 Counterclaim Exceeding Opposing Claim

A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party.

\* \* \* \* \* \*

### 13.05 Counterclaim Maturing or Acquired After Pleading

A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.

\* \* \* \* \* \*

### 13.06 Omitted Counterclaim

When a pleader fails to set up a counterclaim through oversight, inadvertence or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

■ There is no showing that the claims of defendants for their shares of profit were not due at the time the counterclaims were made.

The receiver cites authorities holding that a cross-claim must be one which would support a judgment at law, but there is no showing that defendant's claim for share of profits would not support a judgment at law. The mere fact that the contract provided for different maturity dates for the respective obligations of the parties would not preclude the jurisdiction of a law court to render judgment upon either or both obligations if due.

The receiver next argues that the share of profits never became due because the contract, quoted above, provided that profit share would be paid "provided all *premiums written* during the profit sharing period have been paid to the company by the agent." This provision was intended to protect Cherokee from claims for profit share by agents who had not paid in premiums. In other words, it was a shield, and not a sword to either party. With both parties and both claims before the Court, no rule of reason or justice prevents the adjustment of the rights of the parties in the final judgment.

The receiver cites Tenn.Code Ann. § 56–9–128, which provides:

56–9–128. **Setoffs.**—(a) In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, such credits and debts shall be set off and the balance only shall be

allowed or paid, except as provided in subsection (b).

(b) No offset shall be allowed in favor of any such person where:

(1) The obligation of the insurer to such person would not at the date of the entry of any liquidation order or otherwise, as provided in § 56–9–125, entitle him to share as a claimant in the assets of the insurer; or

(2) The obligation of the insurer to such person was purchased by or transferred to such person with a view of its being used as an offset; or

(3) The obligation of such person is to pay an assessment levied against the subscribers of a reciprocal insurer, or is to pay a balance upon the subscription to the capital stock of a stock insurer.

Tennessee Code Annotated, § 56–9–125 provides:

**56–9–125. Rights and liabilities fixed as of date of order for liquidation.**—The rights and liabilities of the insurer and of creditors, policyholders, stockholders, members, subscribers and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this chapter with respect to the rights of claimants holding contingent claims.

There is no showing in this record that, the Trial Court has entered an order for liquidation or that the defendants did not have a claim which entitled them to share in the assets of the insurer.

The record does not reflect the date of an order of liquidation. There is testimony that, on July 20, 1984, the defendants received a "Notice of Receivership." The notice is not in the record, and there is no evidence that this was the date of an order of liquidation.

Moreover, it is clear that, on July 20, 1984, the defendants had a right to their share of the profits on insurance sold prior to that date, even though the amount of such profits were not to be ascertained until the end of the calendar year.

This Court finds no merit in the proposition that the contract between the parties or any statute precludes the allowance of the counterclaims.

The receiver next advances the proposition that the claims of Cherokee and defendants were not "mutual" because the obligation to remit premiums was fiduciary and the obligation to pay profit share was debtor-creditor, citing *Wagner v. Citizens' Bank & Trust Co.*, 122 Tenn. 164, 122 S.W. 245 (1909). That case involved provisions of the Federal Bankruptcy Act of 1898 as it related to mutual claims of banks and their depositors. It was held that ordinary bank deposits create a debtor-creditor relationship which is subject to being offset against a debt due the bank; but, where a trust account is created for deposit of funds to be distributed pro rata to creditors of an insolvent corporation, no right of offset was allowed to satisfy a debt of the corporation to the bank. The circumstances of the cited case are not deemed to be consonant with those of the present case. It is not shown that policyholders established a trust account with the agents for the benefit of Cherokee, nor is the contract deemed to be such as to create a trust account.

The receiver also cites *Auton's Fine Jewelry & Bridal Center, Inc. v. Beckner's, Inc.*, Tenn.App.1986, 707 S.W.2d 539, wherein two jewelry stores, Beckner's and Clifton's had mutual accounts as a result of exchanging merchandise. However, Clifton's accounts receivable were mortgaged. The mortgage was foreclosed. At the foreclosure sale, Auton's purchased all of Clifton's accounts receivable including the account due from Beckner's. When Auton's sued Beckner's on the purchased account, Beckner's sought to set off its account against Clifton's. Citing Tenn.Code Ann. § 47–9–504(4), this Court held that a purchaser of an account receivable at a foreclosure sale receives the rights of the foreclosing creditor which are superior to the right of a third party holding a counterclaim. The situation in the cited authority

is distinguishable from that of the present case.

In *Ottarson v. Dobson & Johnson, Inc.*, 52 Tenn.App. 280, 372 S.W.2d 777 (1964), cited by the receiver, this Court held that a lender/broker who loaned construction costs and sold completed homes was entitled to offset against claims of the borrower legitimate expenses paid out of the proceeds of sales despite a claim that such proceeds were "trust funds."

■ The receiver insists that the defendants dealt with Cherokee in two different capacities, collecting agent for premiums and creditor as to profit share. This Court does not agree. The agency agreement and the profit sharing agreement were part and parcel of the same contract. The profit sharing agreement was part of the consideration for inducing the defendants to enter into the contract and to place insurance business with Cherokee and to remit Cherokee's charges therefor. Cherokee agreed to compensate the agents for their efforts in two ways (1) a percentage of the premium to be deducted before remitting the premiums and (2) a percentage of the profit derived from the sale of the insurance business procured to be ascertained and paid at the end of the year. Although the obligations were not identical as to due date, they were mutual as having been assumed as mutual considerations of the same contract.

No merit is found in the second proposition advanced by the receiver.

■ The third and last proposition advanced by the receiver is that it is inequitable to allow the defendants to offset profit share against premiums due because this would "penalize" other sales agents who paid to Cherokee the net premiums and thereby lost their right of set-off as to share of profit. Essentially, this is an attempt to apply bankruptcy law to a receivership in a state court by setting aside preferences obtained by a legitimate business practice, i.e. delaying payment to a creditor to assure payment of a counter-claim against the creditor.

The authorities cited by the receiver do not support such disposition of the present case. For example, in *Nolan Bros. Lumber Co. v. Dudley Lumber Co.*, 128 Tenn. 11, 156 S.W. 465 (1913), set off was allowed.

The judgment of the Trial Court included prejudgment interest on the premiums due Cherokee. This satisfies any equitable problems related to the delay in payment by defendants.

The parties have been at some pains to distinguish between the right of recoupment and the right of set off. The distinction is recognized and defined in *History of a Lawsuit, supra,* and in *Howard v. Abernathy,* Tenn.App.1988, 751 S.W.2d 432. As pointed out in *Howard,* recoupment (arising out of the same transaction) may involve either liquidated or unliquidated damages, but set-off comprehends only liquidated damages or those *capable of being ascertained by calculation.* Since the counterclaims of the defendants were capable of ascertainment by calculation, indeed, were reflected by the records of Cherokee, the counterclaims were assertable either by set-off or by recoupment.

Nevertheless, as heretofore pointed out, the counterclaims arose out of the same contract as the claims of the receiver, hence are properly set-off.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the receiver. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

LEWIS and KOCH, JJ., concur.