**NORTHERN INSURANCE COMPANY OF NEW YORK, Zurich American Insurance Company, and American Insurance Company, Plaintiffs,**

v.

**INSURAMERICORP, INC., Defendant.**

Case No. 5:01–CV–143.

United States District Court,
W.D. Michigan,
Southern Division.

March 29, 2002.

Lori M. Silsbury, Lansing, MI, for Plaintiff.

Todd R. Dickinson, Grand Rapids, MI, for Defendant.

### OPINION

QUIST, District Judge.

Plaintiffs, Northern Insurance Company of New York, Zurich American Insurance Company, and American Insurance Company (collectively, "Zurich"), are related insurance companies writing insurance coverage in Michigan and other states. Defendant, InsurAmeriCorp, Inc. ("IAC"), is a licensed insurance agent through which Zurich wrote insurance coverage for numerous policyholders. Zurich brought this action against IAC to recover unremitted insurance premiums collected by IAC on Zurich's behalf. IAC filed counterclaims alleging breach of contract, negligence in handling the issuance of insurance policies, and tortious interference with business relationships. Now before the court is Zurich's motion for immediate disbursement of the insurance premiums and for partial summary judgment.

### Facts

Zurich and IAC entered into a "Producer Agreement" pursuant to which IAC would submit insurance business to Zurich for underwriting. Under the agreement, Zurich wrote insurance coverage for members of the American Mold Builders Association ("AMBA"), which obtained workers' compensation, commercial property, liability, automobile, and umbrella insurance coverage from October 1, 2000, through September 30, 2001. Zurich paid and adjusted approximately $1.5 million for claims submitted on the various policies in the AMBA insurance program. (Galbo Aff. ¶ 5, Pl.'s Br. Supp. Ex. 1.) Pursuant to the Producer Agreement, IAC was required to collect insurance premiums from the AMBA policyholders on Zurich's behalf and hold the premiums in trust. (Producer Agreement § 2C, Pl.'s Br. Supp. Ex. 2.) IAC was to remit the collected premium funds after deducting its authorized commissions. (Id.)

Zurich asserts that it was owed at least $4,394,770.83 in adjusted net premiums and that it has received only $1,978,515.15 of the premium payments from IAC.[1] (Galbo Aff. ¶ 6.) Zurich concludes that IAC

---

1. The net premium amount was calculated by subtracting a commission of 4% or 14%, depending on the type of insurance, from the $4,853,446.26 in gross premium payments collected. (See Statement of Account, Pl.'s Br. Supp. Ex. 3.)

owes it at least $2,416,255.68 in unremitted premiums. (*Id.*)

IAC agrees that it has made $1,978,515.15 in premium payments to Zurich. (Schneider Aff. ¶ 9.) IAC asserts, however, that is has collected $4,697,923.00 in gross premiums, or $4,011,706.00 in net premiums after commissions.[2] (*Id.* ¶¶ 5–6.) Thus, IAC essentially admits that it owes Zurich at least $2,033,190.85 in unremitted premiums. IAC also asserts that regardless of the amount it may owe to Zurich, the premiums it collected on Zurich's behalf were not segregated in a separate account and are no longer in IAC's possession. (*Id.* ¶¶ 8–9.)

### Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

Zurich argues that IAC holds the premium payments it collected on Zurich's behalf in trust and that it is entitled to

immediate disbursement of those funds. IAC contends in response that it has a right of set-off against those funds for any recovery it may receive on its counter-claims against Zurich for breach of contract, negligence, and tortious interference with business relationships.

The Producer Agreement between the parties states as follows:

> All premiums collected by [IAC] are [Zurich's] property and are held by [IAC] as trust funds. [IAC] ha[s] no interest in such premiums and shall make no deduction therefrom before paying same to [Zurich], except for the commissions, if any, authorized by [Zurich] in advance to be deducted by [IAC] and [IAC] shall not, under any circumstances, make personal use of such funds, either in payment expenses or otherwise. If the laws or regulations of the state listed in [IAC's] address requires [IAC] to handle premiums in a fiduciary capacity or as trust funds, [IAC] agree[s] that all premiums of any kind received by or paid to [IAC] shall be held by [IAC] in a premium trust fund account maintained by [IAC] with a bank insured at all times by the Federal Deposit Insurance Corporation and chargeable to [IAC] in a fiduciary capacity as trustee for [Zurich's] benefit and on [Zurich's] behalf and [IAC] shall pay such premiums as provided in this Agreement. If [IAC's] state law allows [IAC] to deposit premiums in an interest bearing trust account, [Zurich] will give [IAC] permission to retain any interest earned on premiums in the account pending payment to [Zurich].

(Producer Agreement § 2C.) The Michigan insurance code confirms that IAC holds the premium funds in trust as a fiduciary:

---

**2.** IAC disputes the commission rates reflected in Zurich's figures and contends that it should receive commissions of 10% and 19%, rather than the 4% and 14% commissions computed by Zurich. (Schneider Aff. ¶ 7.)

An agent shall be a fiduciary for all money received or held by the agent in his or her capacity as an agent. Failure by an agent in a timely manner to turn over the money which he or she holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility.

M.C.L. § 500.1207(1). In addition, "Michigan case law has uniformly held that premium payments received by an insurance agency have the status of trust funds for the benefit of the insurance principal." *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir.1985) (citing, among others, *Glerum v. Spencer*, 251 Mich. 163, 231 N.W. 38 (1930)). In a more recent, but unreported case, the Sixth Circuit accurately summarized Michigan law as follows:

Relying on Michigan law, we concluded that Mich. Comp. Laws 500.1207(1)—which provides that an insurance agent "shall be a fiduciary for all money received or held by the agent in his or her capacity as an agent"—established an express trust with a fiduciary relationship between the insurance agent and the principal. The insurance agent's failure to remit premiums to the principal was thus held to constitute defalcation while acting in a fiduciary capacity, barring discharge in bankruptcy.

*Lagere & Walkingstick Ins. Agency, Inc. v. Huff (In re Huff)*, 1997 WL 560060, at *2 (6th Cir.1997) (citations omitted).

The dispute in the instant case, then, is whether an insurance agent can set off common law claims against the money it holds in trust for the insurance company. Zurich cites § 2066(1) of the insurance code, which provides,

[n]o insurance agent or solicitor, personally or by any other party, transacting any kind of insurance business shall offer, promise, allow, give, *set off* or pay, directly or indirectly, any rebate of, or part of, the premium payable on the policy or on any policy ... for insurance, on any risk in this state now or hereafter to be written, which is not specified in the contract of insurance.

M.C.L. § 500.2066(1) (italics added). Zurich argues that the explicit language of the statute prohibits IAC from taking a set-off for premium payments. As IAC correctly notes, however, even though the statute prohibits a "set off" by the insurance agent, the provision addresses rebates and illegal inducements for the *purchase* of insurance. The statute is not applicable to this situation involving funds held in trust and the question of a set-off for damages in a counterclaim.

Nonetheless, the general law of trusts does prohibit IAC from setting off its claims against the collected insurance premiums. IAC is the trustee for these premiums; Zurich is the beneficiary. The general rule in trust law is that "[t]he trustee is not entitled to a charge on a beneficiary's interest in the trust estate to secure a liability of the beneficiary to the trustee not connected with the administration of the trust, unless the beneficiary contracts to give him such a charge." RESTATEMENT (SECOND) OF TRUSTS § 250 (1959). *See* 76 AM.JUR.2D *Trusts* § 723 (1992) ("A trustee cannot use a private demand against the trustor or the beneficiary as a setoff or counterclaim against the demand of the beneficiary for trust property or funds to which he is entitled."). The Supreme Court has stated the common law rule this way: "A trustee cannot set off against the funds held by him in that character his individual demand against the grantor of the trust. Courts of equity and courts of law will not allow such an application of the funds so long as they are affected by any trust." *Cook Co. Nat'l*

*Bank v. United States,* 107 U.S. 445, 452, 2 S.Ct. 561, 568, 27 L.Ed. 537 (1883).

Thus IAC has a right of set-off only if its claims against Zurich are related to the administration of the trust. That is, IAC as trustee may "set off against the sum due . . . a liability of the beneficiary to the trustee in his representative capacity." GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 814 (2d ed.1981). If the counterclaim is for a private, individual dispute, no set-off is available because "acceptance of the trust is a transaction independent of the transaction giving rise to the demand of the trustee against the beneficiary." 76 AM.JUR.2D *Trusts* § 723. This is the law in Michigan. For example, in *First National Bank of Detroit v. E.T. Barnum Wire & Iron Works,* 58 Mich. 124, 24 N.W. 543 (1885), the general manager of a bank, who held a promissory note from the bank, was appointed trustee over certain bank funds. When the bank became financially insecure, the general manager claimed a right of set-off against the trust funds for the amount he was owed on the promissory note. The court held that he could not claim a set-off against the trust funds because the money was being held in a different right than the amount due him under the promissory note and the debts were not mutual. *Id.* at 129–30, 24 N.W. at 545–46.

Other courts adhere to this rule as well. In the foundational case of *Topas v. John MacGregor Grant, Inc.,* 18 F.2d 724 (2d Cir.1927), Judge Learned Hand explained that the right of set-off was not available to a trustee against the beneficiary because a trust fund is not a pledge to secure an obligation to the trustee. *Id.* at 726. The trustee holds the trust property in a separate obligation from other transactions, and the duty to remit the trust funds is not cancelled out by a private claim. *Id.* See also *Norfolk Shipbuilding & Drydock Corp. v. Carlyle* (*In re Carlyle* ), 242 B.R. 881, 888 n. 4 (Bkrtcy.E.D.Va.1999) (stating that "[a] trustee cannot set off against the trust fund held by him his individual demand against the creator of the trust" because the fiduciary holds the property in a separate capacity) (quoting *First Nat'l Bank v. Johnson,* 183 Va. 227, 31 S.E.2d 581, 585 (1944)); *McReynolds v. Cherokee Ins. Co.,* 815 S.W.2d 201, 207 (Tenn.Ct. App.1990) (holding that an insurance agency's obligation to collect and remit premiums and the insurer's obligation for a share of the profits were mutual and thus the agency could set off a share of the profits from the amount of the premiums owed).

This court holds that IAC does not have a right of set-off against the funds it holds in trust for Zurich. IAC holds those premiums for Zurich solely in its fiduciary role, but IAC's counterclaims against Zurich do not arise out of its position as fiduciary, nor are they against Zurich in its position as beneficiary. IAC's claims do not arise out of the administration of the trust. An example from *In re Nuclear Imaging Systems, Inc.,* 260 B.R. 724 (Bankr.E.D.Pa.2000), is helpful. If A in his individual capacity owes $100 to B, but B owes $50 to A in B's capacity as a trustee of a trust or as a fiduciary or agent, the obligations are not mutual and B cannot take a set-off against the money A owes him. *Id.* at 735 (citing L. KING, 5 COLLIER ON BANKRUPTCY, ¶ 553.03[3][c] (15th ed. rev.1999)). A and B are not acting in the same capacity. *Id.* In the same way, IAC cannot take a set-off against the funds it holds in trust on Zurich's behalf. IAC holds that property in a separate capacity, notwithstanding any independent claims it may have against Zurich. IAC is not counterclaiming for a share of profits under the producer agreement, as the insurance agent in *McReynolds,* cited above. *McReynolds,* 815 S.W.2d at 207. Rather,

its claims are for breach of contract and interference with a business relationship, and as such IAC's claims do not arise out of its representative capacity as trustee. Finally, the obligations are non-mutual because Zurich only has a *potential* obligation to IAC; the counterclaims are not for a sum certain, and IAC may or may not succeed on those claims.

IAC argues against this conclusion by noting that set-off was traditionally an equitable remedy and was not available if there was an adequate remedy at law. IAC concludes that the merger of law and equity in the courts and the broadened permissible counterclaims of Fed.R.Civ.P. 13 make the old common law rules regarding set-off inapplicable. The court disagrees. The cases and treatises cited above do not lose their authority merely by the merger of law and equity as a matter of procedure in federal and in some (not all) state courts. Courts everywhere still recognize the differences between legal and equitable remedies. *See, e.g. Fenestra, Inc. v. Gulf Am. Land Corp.,* 377 Mich. 565, 593, 141 N.W.2d 36, 48 (1966) ("[A]lthough the procedural distinctions between law and equity have been abolished in this State since January 1, 1963 ... the substantive elements of a cause of action and the kind of remedy available must still be determined by reference to the substantive law of actions in law and equity as they existed before the merger."). The Supreme Court, in setting out the rule that a trustee has no right of set-off against trust funds, made no distinction between "courts of equity and courts of law." *Cook Co. Nat'l Bank,* 107 U.S. at 452, 2 S.Ct. at 568. While Judge Hand termed his opinion in terms of fairness and equity to the beneficiary and the trustee, *see Topas,* 18 F.2d at 726, the propositions that the fiduciary holds the trust property in a separate capacity and that the claims between the parties are not mutual is not based on a distinction between equity and law but between the types of obligations and property held. The fundamental rules of trust law applicable here have not changed, and no statutory change in the law gives IAC a right of set-off for its counterclaims. *See* RESTATEMENT (SECOND) OF AGENCY § 421 (1958) (stating that the privilege of an agent mitigating damages by use of set-off against a principal's claims is controlled by statute).

Finally, IAC argues that Zurich's motion should be denied because the relief Zurich seeks is unavailable. According to its brief and an accompanying affidavit from its chief executive officer, IAC did not segregate Zurich's premiums into a separate account, and none of the funds IAC has in its possession are earmarked or otherwise identifiable as proceeds of those premium payments. (Def.'s Br. at 7; Schneider Aff. ¶¶ 8–9.) In other words, IAC says that it has violated its contract with, and its fiduciary duty to, Zurich—so, too late and too bad.[3]

IAC owes the premiums to Zurich whether or not IAC kept the funds separate. IAC cannot use its own mistake—indeed, its own breach of the producer agreement and violation of its fiduciary obligations—as a defense against Zurich's claim. Moreover, even if IAC is insolvent, this would not preclude a finding of liability against it. Zurich is entitled to its premiums regardless of whether IAC still has them.

### *Conclusion*

For the foregoing reasons, the court will grant Zurich's motion for immediate disbursement of insurance proceeds in the amount of $2,033,190.85, plus any earnings

---

**3.** It is not clear, but IAC appears to claim, not that it does not have the money to pay Zurich, but only that it failed to segregate Zurich's funds.

on this amount. The court will grant partial summary judgment to Zurich as to the issue of IAC's liability, but there still remains a genuine issue as to the amount of total premiums collected on Zurich's behalf and the amount of commissions to which IAC is entitled.

An Order consistent with this Opinion will be entered.

### *ORDER*

For the reasons stated in the Opinion filed on this date,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Immediate Disbursement of Insurance Premiums and for Partial Summary Judgment (docket no. 23) is **GRANTED IN PART**. Summary judgment is granted as to Defendant's liability for unpaid premium funds, and Defendant is ordered to immediately remit $2,033,190.85, plus any actual earnings on this amount, to Plaintiffs.