Chief Judge Breitel.
 

 In this CPLR article 78 proceeding, in the nature of mandamus, petitioner Chase Manhattan Bank, as assignee of one Francis Brown, seeks payment of the amount of a judgment in favor of Brown against the State. The judgment, as modified by stipulation, was for the balance due Brown under an agreement for engineering services rendered to the State.
 

 The State asserts a right of setoff arising from nonpayment by Brown of withholding and unemployment insurance taxes. Special Term in this proceeding awarded judgment to Chase
 
 *592
 
 for $98,863.56. The Appellate Division modified to allow the State’s setoff in the sum of $14,087.97, and Chase appeals.
 

 There are two issues. The first is whether, under the Uniform Commercial Code, a perfected assignment bars a subsequently arising setoff in favor of an account debtor who is without actual notice of the assignment. Restated, the question is whether the constructive notice provided by perfection of a security interest by filing a financing statement under Uniform Commercial Code suffices to preclude an account debtor’s right to set off subsequent debts. (See Uniform Commercial Code, § 9-318, subd [1], par [b]; § 9-302, subd [1].)
 

 The second issue arises because the State happens to be both the account debtor and the official repository under the Uniform Commercial Code for the filing of financing statements. Thus, the second issue is whether, assuming that constructive notice is insufficient and that actual notice is required, filing with the Secretary of State constitutes actual notice of the assignment to the State rather than only the "official” and convenient filing prescribed by Uniform Commercial Code.
 

 The order of the Appellate Division should be affirmed. There must be actual notice of assignment before an assignee may preclude an account debtor’s right to set off. Filing with the Secretary of State does not provide actual notice to the State as a debtor. The designation of the Secretary of State’s office is a matter of commercial convenience and places no burden on that office other than to file and index financing statements which it receives as the repository under article 9 of the Uniform Commercial Code.
 

 On July 23, 1964, the State Department of Transportation entered into an agreement with Brown for the partial survey and design of a highway. On November 17, 1964, in an independent transaction, Brown granted to Chase a security interest, covering existing and future loans, in all of Brown’s personal property, including contract rights and accounts receivable. Chase perfected this security interest by filing on December 14, 1964. From February, 1966 through September, 1967, Chase made five loans to Brown totaling over $700,000, less than $200,000 of which has been repaid.
 

 Although Brown presumably completed work on his agreement with the State in January, 1968, a dispute arose over payment. Litigation followed, and a judgment in favor of
 
 *593
 
 Brown for $164,772.56 eventuated, subject to lawyers’ fees of $65,909.
 

 Meanwhile, in 1968 and 1969, several years after Chase had perfected its security interest, the State accumulated claims against Brown for $14,087.97—$8,085.64 in unpaid withholding taxes and $6,002.23 in unpaid unemployment insurance taxes. These constitute the setoffs at issue.
 

 Subdivision (1) of section 9-318 of the Uniform Commercial Code provides that the rights of an assignee are subject to any defenses or claims of the account debtor arising out of the contract between the account debtor and the assignor, and "any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.” Subdivision (26) of section 1-201 provides, in part, that "[a] person 'receives’ a notice or notification when (a) it comes to his attention; or (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.” These two provisions, taken together and without more, establish a requirement of actual notice to the account debtor before the preclusion of setoffs. (2 Hawkland, Transactional Guide to Uniform Commercial Code, p 767.)
 

 The foregoing summary analysis is consistent with basic policies underlying the notice filing provisions of article 9 of the Uniform Commercial Code. The code was designed to rationalize the law of secured transactions through extensive use of filing to perfect security interests. Priorities were simplified by use of a "first to file” rule to determine the rights of parties with otherwise similar security interests (see Uniform Commercial Code, § 9-312, subd [5]). Prompt filing of a security interest protects the secured party against a wide range of creditors. In most situations, a secured party who files promptly and properly will obtain maximum possible protection.
 

 The protection afforded by prompt filing is not, however, absolute. For instance, a perfected security interest is subordinate to the interest of a buyer in the ordinary course of business, even if the buyer knows of the security interest (Uniform Commercial Code, § 9-307, subd [1]). Moreover, under section 9-309, a holder to whom a negotiable document of title has been duly negotiated takes free of a perfected security interest. That section expressly provides that filing does not
 
 *594
 
 constitute notice for the purpose of nullifying due negotiation. Similarly, the "first to file” rule, designed to resolve situations where secured parties are competing in asserting superior rights, should not be controlling when the dispute is between a secured party and an account debtor (see
 
 Central State Bank v State of New York,
 
 73 Misc 2d 128, 129-130).
 

 Section 9-318, in its first subdivision, which, as noted, subordinates the rights of assignees to defenses and claims of account debtors, was said by its drafters to make no substantial change in prior law (McKinney’s Cons Laws of NY, Book
 
 62V2,
 
 Part 3, Uniform Commercial Code, § 9-318, Official Comment, subd 1). Under prior law, central filing of a financing statement could not have constituted notice, since the current system of constructive notice by central filing is a code innovation. Hence, the prior law, which the Official Comment advises has not been substantially changed, required actual notice to the account debtor (see
 
 Continental Purchasing Co. v Van Raalte Co., 251 App
 
 Div 151, 152). Moreover, subdivision (3) of the section, dealing with an account debtor’s right to pay an assignor until notified of assignment, uses the same "receives notification” language as subdivision 1 (par [b]) but makes it clear, by reference to the account debtor’s right to further proof of assignment, that actual notice is contemplated. Indeed, to begin with, the terminology "receives notification” makes no sense except as a reference to actual notice rather than constructive notice. Hence, by analysis of section 9-318 as a whole, subdivision (1) (par [b]) requires actual notice.
 

 The diligent assignee need not be hurt by the actual notice provision in section 9-318 (subd [1], par [b]); he may protect his rights by verifying the specific accounts assigned and notifying account debtors of the assignment. If there be any reason for non-notification, as is the case in some industries, then the assignee should be aware of the risk he is assuming.
 

 Returning to the precise issue at bar, the view that filing a Uniform Commercial Code financing statement with the Secretary of State constituted actual notice to the State of New York is unrealistic and therefore specious. True, the State in all its parts may be an "entity”. True, there is no statute which specifies the proper office for notifying the State of an assignment (see, for comparison, US Code, tit 41, § 15). In fact, if the notice had been delivered to any State official or agency having a responsibility to forward the notice to the proper authorities, there would have been a different case. Without
 
 *595
 
 now passing on the question there might have been effective delivery if made to the Comptroller, the Department of Transportation, or even to the Secretary of State provided it is a notice "to” him and not merely a paper "filed with” him. Although Uniform Commercial Code does not designate any particular person or place for receipt of notice, least of all to the State, the code does provide, in general terms, conditions under which delivery of notice will be effective. The provisions are relevant and supportive of the analysis (see Uniform Commercial Code, § 1-201, subds [26], [27]).
 

 The point is that a paper filed with a State office solely as a commercial repository under the code in order to give constructive notice to all the world is not actual notice. The subordinate official or clerk who receives a financing statement for filing, if he is not to be wasting the taxpayers’ money, has no duty beyond filing and indexing the statement. The indexing and the filing is for the benefit of outsiders whose duty it may be to search the index and read the indexed statements before they extend credit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed.